Court, Walter K. Pyle on behalf of Petitioner Mr. Chakar. I'd also like to share my argument with Mr. Mark Rosenblum from amicus from the ACLU. I would like to focus on the content of the speech involved and the legislative history. Mr. Rosenblum would like to focus on the three exceptions mentioned in R.A.V. v. St. Paul and answer any hideous questions, procedural questions that may arise. California's penal code section 148.6 criminalizes the filing of any allegation of misconduct against a peace officer. It does not criminalize false or even allegations of misconduct against a public official. It does not even criminalize all false statements about a police officer, only those that involve misconduct. There's a federal statute, section 1001 of the federal criminal code, that makes it a crime to make a false statement, actually a material false statement, on any matter that's quote, within the jurisdiction, unquote, of the federal government. But that statute criminalizes all false statements. The perjury statutes criminalize all false statements. This one doesn't criminalize all false statements. It doesn't make it liable. It makes the further content discrimination. To start looking at this in a vacuum doesn't seem to me to be all that useful. Don't we have to look at all California statutes that criminalize falsity of various kinds and see what gaps are left? Yes, we do, but with the caveat that I'm not sure that even all those statutes would pass constitutional muster. I'm sorry, I don't understand that. Well, for example, if there were a statute, and I believe there is a statute, that makes it a crime to file a false allegation in a disciplined proceeding against an attorney. I'm not sure that that would... If we look at all, what's happened here is that the legislature seems to have acted by increments, but the increments don't seem to be what matters. What matters in the end is what are we left with in the end. If you take all of them together and add them all up, with regard particularly to, you know, we just slice off knowing false statements regarding, in complaints against public officials. When I look at the statute, it seems to me they actually pretty much cover the ground if you take everything together and add them up together, instead of looking at each discrete statute separately. Well, I don't think you can look at each... If you have to look at the particular statute that this gentleman was convicted of violating, I think that... I don't know of any statutes that make it a crime to make a false allegation against a firefighter. What if it is under-inclusive? If it is actually permissible from the standpoint of what it does? Well, what it does is it makes a particular type of communication, a particular type of speech, illegal. If two of us were to walk out front and see a policeman, a Pasadena policeman beating a homeless man, and one of us were to write a letter to the Pasadena Police Department and say... That's not covered. If you write a letter to the Pasadena Police Department, it's not covered. That's my understanding. My understanding is it's only covered if you file a formal complaint. No, Mr. Checker wrote a letter to the El Cajon Internal Affairs Division. He didn't have a form in which there was this notice given to him and he signed it? No, and that was one of the contentions in the criminal trial. Well, that's different. He shouldn't have been convicted. But as I understand the statute, it doesn't apply to simply writing a letter. It simply says file an allegation. As I interpreted, it could be with anybody. It could be with the city council. It could be with the district attorney. It doesn't have to be with his employer. It's not limited where it can be filed. I believe the record reflects that it was a letter that Mr. Checker wrote to the Internal Affairs Division. He happened to sign it under a penalty of perjury. The police department. The police department. The Internal Affairs Division of the police department, yes. What do you know about what the statutes say about what the police response to one of these letters, complaints or whatever? If the police is interviewed and lies, is that a crime? If somebody files a letter, Mr. Checker wrote a letter, he made an allegation. If they then interviewed the policeman who he was accusing and the policeman lied in that interview, would that be a crime? It's not a crime that I'm aware of. I don't know of any statute. In the federal jurisdiction, it would probably be a crime under 1001. But there's no comparable state statute. It's a crime to lie to a state official. So the police officer can write his own letter and say, no, it was in self-defense. If that's false, it's not a criminal act. So this is unbalanced in that respect, too. Now the legislature talked about there's a need for this. And largely it was based on one letter that was written back in 1994 from a deputy in the Los Angeles Police Department. Who said that after Rodney King, their police departments were opening up their complaint process. I don't know if that's true or not. I don't think anybody knows if that's true or not. It's just a statement. And he's suggesting that we close it back up. But as his letter indicates, this is not a universal conclusion by all law enforcement people. He talks about, he says, I don't accept the argument. And he says many police administrators make this argument. That the admonition that's required, please be advised that you're subject to criminal prosecution. That many police administrators. Was he given that admonition? He was not, I don't believe he was, no. There was some indication he had filed a complaint earlier against a different officer. And they had sent him out this admonition. But that was a different officer. That was a Sergeant Borjas or something like that. In this one, as far as I can tell from the record, he wrote the letter. Well, we have on the facts of the case, whatever the statute may say, is an individual who wrote a letter to the police department, did not file a formal complaint, didn't sign anything. The admonition. The admonition or penalty appraisal or anything else. And has been prosecuted. Yes. He filed a complaint, didn't he file a complaint with the city? Claim form? He filed a government tort claim with the city, yes. Which is a, that's a prerequisite to bringing a civil suit for false arrest. Or other civil suit against the government. As far as state laws. Yes, correct. I think there may be a similar thing in the Federal Tort Claims Act, I don't recall. But that would be a separate allegation. But these, the unconstitutionality of this is that it criminalizes solely on the basis of what the person says. If he says this was misconduct, it's criminal. If the person says this was great conduct, it's not criminal. It's criminal if the citizen or some witness down the street writes a letter. It's not criminal if the police officer or a different witness writes a letter and says the police officer did a good thing. He acted in self-defense. So all these things come down to one thing, which is that the criminality is based solely on the conduct. Excuse me, solely on the content of what's in that message. What's the government interest here? I mean, the government interest presumably is largely in resources. Let's take a false alarm statute, okay? It's a crime to file a false alarm. It's not a crime to tell the fire department truthfully that there's a fire. It's only a crime to tell them falsely that there's a fire. It's not a crime to tell them there's not a fire, truthfully or falsely. How is this different? Well, I think this one, if you say there is a – all these things are going to be different because each communication is going to be different. But with a false alarm, you're saying there is a false alarm. Go over there and do something. Go over there and do something. What are you saying when you file a letter with the police about a complaint? You're saying you have a rogue policeman, go do something. And if you're going to do something about that policeman, and then there's some other guy over there where you're not going to have the resources to investigate, but he may be really the wrongdoer. Right, but it's only if I say the policeman did wrong. If I say the policeman did right. Because that's where the interest is. They're not going to investigate a statement that the guy's a good guy. They're going to investigate the statement that he's a bad guy and you should get him off the streets. Same as the fire alarm. This is true, except that the – it is that very content, that very subject matter, that very point of view, that very speech content. I need to know why this is different than a false alarm. I've been having a lot of trouble thinking about that. No, I haven't thought about false alarms. But it – Well, a false alarm endangers people. It does. It has secondary effects. It can come out and – But that's the basic argument here, isn't it? If we're going to be spending our time investigating false claims, we're not going to be able to investigate the true ones, and we're not going to get the bad actors off the streets. Well, there's no indication – in the Federal Register, that's supposedly the reason behind it. But that's going to be true with firefighters and with DMV employees, too. Well, my understanding is that there actually is a statute that applies generally to civil servants. In what respect? That it's – you can file a charge, but you have to file it in droves, complaining about them. There's a regulation that says that if you want to file something with the State Personnel Board, complaining about somebody, you can do it, but it has to be a sworn statement. Well, but a sworn statement makes any statement, whatever the content, it makes it unlawful. It only complains about people who are covered by the Civil Service Law. But I don't know that there's – I don't know that that statute makes it unlawful simply to file the complaint. As I said, it's a request to file charges against State employees. A request of the Board to consent to file charges shall be in writing and shall be accompanied by the proposed charges. The statement of proposed charges shall be a sworn statement. A sworn statement means under penalty of perjury. Yes, but that would apply to any sworn statement that was brought into the Personnel Board. Yeah, filed charges. Whether it was false or not. Whether it complained of misconduct or not. I'd like to give my amicus. You better do that. Thank you. Good afternoon, Your Honors. Let me start, Judge Berzon, with the questions that you raised. I believe Your Honor correctly focuses the question as to what the landscape looks like here. What is the situation under California law with respect to filing of the sorts of claims that we're talking about today? I'll keep your voice up a little bit. I'm sorry. I'm sorry, Judge Pregerson. And this is the issue. What RAV establishes, and this goes to your question, Judge Huck. What RAV establishes, as I know you're aware, is that even as to speech which is prescribable, there cannot be selectivity, discrimination based on either content or viewpoint. The problem with respect to this particular statute, taken in conjunction with 184, 148.5, taken in conjunction with Civil Code Section 47 and the other sections to which you are alluding, Judge Berzon, is that there is a particular class of complaints that go to any claim with respect to behaving improperly regarding police officers. With respect to those claims, if there is an allegation that there has been a false statement made, the individual may be prosecuted for misdemeanor. That doesn't exist anywhere else. Well, there's a provision that I've found that says that any provision with the consent of the board, the appointing power may file charges against an employer requesting, this has to do with the State Personnel Board, against an employer requesting adverse action be taken for one or more causes for discipline specified in this article. And then the regulations say it has to be filed under penalty of perjury. There's two problems with that, Your Honor. First, if we take a look at other circumstances. Take a look, for example, complain that a judge has accepted a bribe. You bring that to the Commission on Judicial Performance. You complain, for example, to the Ethics Commission that a politician has acted fraudulently, has stuffed a ballot box in a particular issue. That statute doesn't cover those particular circumstances. So you have a... I'm getting narrower and narrower. I mean, there may be some people who aren't covered by this, but there are a lot of people who, if you start taking, if you start looking at the whole landscape... But under RAV, Your Honor, that's not the question. The only types of intimidation that were left out that the court focused on had to deal with homosexuality, political affiliation, union membership. There certainly wasn't any claim with respect to RAV that there were large numbers of crosses being burned with respect to union membership or with respect to the other areas that we were talking about. The problem, and that's precisely what Justice Scalia talks about on page 387 of the opinion, is that if there are any sorts of distinctions that are made, the message that is being delivered is that there is the specter of the government playing favorites, trying to push out a particular sort of ideas out of the marketplace. And that's really, I think, a way to... I'm going to tell you, Your Honor, that a perjury claim is not the same as this particular claim that we're talking about, which is the second distinction here. A perjury claim, as Your Honor is very well aware, deals with a very specific set of elements that are necessary in order to prove perjury. Those elements are not built into 148.5. Indeed, if the legislature wanted to go back and say, we will simply say, any time you complain about any officer or any official, you have to do it under perjury, that would cure the problem that we're talking about. But that is not the situation that exists in this matter. Why would that have to be? Why can't you prohibit false claims? Isn't that really pretty much like defamation, isn't it? It is, Your Honor. And what R.A.V. did in 1992 was to say that even though false claims, even though defamation is prescribable under the First Amendment, Your Honor will recall that at page 385 of R.A.V., the court's Justice Scalia said, it doesn't mean that that speech is invisible. And even within the realm of prescribable speech, you can't have those distinctions. It would be as if you could say, we're going to punish obscenity only when the theme is critical of government. There's a real difference that's been troubling me, because you can have obscenity that's about something that has value in itself, and you can have threats that are of that character,  But truth and falsity, it seems to me that the only explanation for why you would apply R.A.V. to knowing falsity would have to be a spillover effect, the fact that you simply can never be sure about any fact-finding in this area. It's still a chill argument. There's no value in itself, even though the other categories could have value in itself. I want to answer that in three ways. First, Your Honor, I appreciate the theme of the points you're making. That isn't the law. I know there are some statements in R.A.V. about libel in government, but I didn't really understand. The fighting words, whether we're talking about fighting words or obscenity or defamation, they're all put on the same platform. But for different reasons. Excuse me? But for different reasons. The other three are sort of manner reasons, and this one's not a manner reason. But there's no distinction within the analysis of any case that I'm aware of that makes that, well, they're all prescribable, but fighting words are a little bit more important under the First Amendment than obscenity, which is a little... Well, obscenity is prescribable for different reasons, and they can have, some of them will have other kinds of content, and this really won't. I have to figure, therefore, I guess what I want to know is what does R.A.V. mean about this category of speech other than that there's transaction costs and errors when you try and deal with knowing falsehoods. I think help for Your Honor's question comes in looking at the analysis of the three exceptions that are in R.A.V. Because what the Court says there is that we put these exceptions in here because we really want to make certain that what is taking place is not content-based discrimination. And in some ways, the third exception is the most interesting, although I think it... Well, the third really is one exception, as I understand it. That's really what I think. And the other two are examples of it. I really agree with that. But the underlying policy is precisely what the Court said. We want to be certain. We want to be absolutely certain that there is no reasonable possibility that what is going on here is an attempt to suppress protected speech. Now, I want to make two points with respect to that. First, that's a slam dunk in this case, Your Honor, because there's nothing in the record that suggests that there's no reasonable possibility. The courts, whether it's the Walker case or the Glitchin case or the Hamilton case, any of those cases have said it is common sense that that is what is taking place. Why wouldn't you, if you were really concerned about false claims, why wouldn't you say, if you say a judge has committed a murder or you say that a schoolteacher has committed a murder... That's precisely what has gone on here. And that's one of the purposes of the First Amendment, to assure that no particular lobby is able to tilt the bounds with respect to the speech itself. That is precisely what is going forward. And so it's this leakage into what is protected speech. Because people might be afraid that somebody would think they were lying knowingly, even when they're not. That's the only reason. Is that right? No, I don't completely agree with that. I do think that that is a predominating reason with respect to what is underlying why R.A.V. extended Moseley and Carey and Simon and Schuster. Knowing false speech. That's right. To a prescribable area of speech. There's not any prescribable area. Knowing false speech. I really want to have to understand why we're doing it to them. But R.A.V. extended it to fighting words. And the example that Justice Scalia gave extended it to obscenity. And you're correct, there's language about libel in there. This deals with libel. Why would you do this with respect to prescribable speech? The argument that was made is precisely the argument that they have made in their papers in that this speech is worthless. This speech is useless. But that ignores both your Honor's point about the chill that will result and that is precisely what is at issue here. But it also ignores the notion that content discrimination this goes to your point, Judge Huck content discrimination, viewpoint discrimination transcends it. We don't want you can have a viewpoint. You can have content even if it's obscenity. Even if it's defamation. I know your Honor disagreed on the viewpoint. Well, actually, I think the viewpoint discrimination argument may be the stronger one. There are two problems with the viewpoint. And if I may just take a moment, I want to highlight both of them. The first problem is this with respect to the viewpoint. Under 47, Civil Code section 47, any statement that is made with respect to a proceeding is privileged statement. Absolutely privileged. Not even New York Times privileged. If your Honor looks at the image case, the California appellate court case, it says the New York Times privilege doesn't give enough protection to stop the chill. Your point earlier, Judge Berzon. The problem here is that if the allegation is made, a citizen says, this officer said, called me a son of a bitch. Then the officer in responding to it as part of the proceeding says, no, I didn't. He called me a son of a bitch. And from a resource allocation point of view, they're both equally. Precisely right. And the officer's statement is absolutely privileged. The other one can be prosecuted. Now, I think there is a second viewpoint issue, and I know your Honor took issue with it, but I want to, I'd like to lay it out a little bit more. If the concern is false statements, why is it only statements that are directed against the government that can be prosecuted? An individual says, this officer, he was terrific. He was courteous. And as a result of it, that officer may get a commendation, may get a promotion. It may even influence the way that a particular crime is investigated. That's not punishable. That's not prosecutable under this statute or any statute that exists. It is what Justice Scalia says when he said, if you're going to have a fist fight, one side can't use a different set of rules with its arm tied behind its back. And that's why it is viewpoint discrimination on both bases. And as your Honors know from Rosenberger and R.A.V., viewpoint discrimination is a more egregious form of content discrimination. The sorts of exceptions that we've been talking about briefly don't even apply in that circumstance. Let me make one final point. Your Honors talked at some length about the investigation that is required here. That, your Honor, if that becomes the basis for upholding the statute, then R.A.V. is dissolved and indeed the whole notion of content-based discrimination is dissolved. Three reasons. First, sort of secondary effects that are being talked about in R.A.V. If your Honors look at Renton, Booth at page 320, they deal peculiarly with adult theaters. Booth says that's the way this comes up most of the time. Does that make sense? Of course it makes sense. Because with respect to squalor in neighborhoods and increased crime... Why do you have squalor in neighborhoods and increased crime? Presumably because the audience... There's no explanation in any of those cases about how the secondary effects are connected... But the difference is... The nature of the audience. The difference is this. And this is really the analogy here. What the officers are doing in the Renton circumstance is they're out there dealing with prostitution, increased crime, increased violence out there. They're not sitting in the theater wondering is this really obscenity or not. The circumstance here is such that that's really all that's going on. It's a direct correlative of the speech itself. They're trying to determine whether it's false or not. The whole secondary effect doctrine would be dissolved if it's pushed to this matter. Think about it with respect to R.A.V. It's only happening... I don't find it particularly useful to think about it in terms of the exceptions to R.A.V. But if we think about it that way... I mean, they're only doing this at all because they've agreed to do the investigation to begin with. They don't have to. Exactly. Well, let me say this with respect to that, Your Honor. If this were to be cured, they added the investigation to the statute. If this were to become the rule, then after R.A.V., they say, okay, St. Paul says, okay, I'll tell you what we're going to do. We're going to assign 100 police officers to every cross burning that deals with race or religion. And then when it comes back in front of the Supreme Court the second time, they say, oh, that's the secondary effect. We want to stop that additional work that's required and resources that's required. Or they say in a permit statute, if it's a controversial march, then we're going to need more officers and you have to file a report about what's going on if it involves race. You could always add that sort of burden to the core speech issue as a way of manufacturing after the fact. Mr. Pyle, that this statute applies whether or not there is a formal complaint that triggers an investigation. I do, Your Honor. The statute says every person who files any allegation of misconduct against any peace officer. So it's not really tied into the obligation to have an investigation. They may not investigate. Part 2 says that if the agency accepts the allegation, it can require, it shall require the complaint to read and sign. And then. Had his letter back to him and there would have been no problem, there would have been no problem to accept the allegation. That's true. They could nonetheless prosecute him. That is correct. That is correct. But I want to, this is really the tail wagging the dog, Your Honor, because as Mr. Pyle said, first of all, there isn't any evidence here that there weren't false complaints to deal with judges, that there weren't false complaints to deal with politicians or other individuals, or that these are even false in the context of the circumstances. That's the sort of requirement that the First Amendment would demand in any case. But the bigger issue is that in terms of the core concerns of content discrimination, this really is a side point. It is intimately related. And as I said, if this were to be the case, then content discrimination in these circumstances would quickly disappear because legislatures or city councils would add some burdensome requirement to the content discrimination area. And I appreciate the courtesy of the Court to let me argue with something like that. Thank you very much. All right. May it please the Court, my name is Kelly M. Moran. I'm a Deputy District Attorney with the County of San Diego. I represent the State of California, the people in this case, a real party of interest, an appellee. As a way of introduction and maybe housekeeping, I plan on allotting some of my time to two of my weakest writers, who are seated next to me. The first one is Mr. Lockwood, who is the attorney from areas in Lockwood, which represented the City of San Bernardino in the Hamilton v. San Bernardino case. And as the Court knows, we actually now have three decisions in three different directions. We have the United States Supreme Court case. We have Judge Lockwood's opinion from San Diego. And we also have Judge Kemlin's decision in the San Bernardino case. So, I'm going to allot at least eight minutes to Mr. Lockwood, who also happens to be the grandfather of putting together all those statutes in the State, which outlined false statements and... putting together all those statutes. He actually was the author of putting together all those statutes, which demonstrate that it's not just police misconduct, a false filing of police misconduct is illegal in California, that there's other professions and avenues for false statements are also illegal. And also seated next to him is Mike Capizzi, who wrote an amicus on... from the San Diego Sheriff's Association, San Diego Police... no, excuse me. California Sheriff's Association, California Police Chief Association, and... what is the last part? California Peace Officer. I'm going to try to allot him four minutes, if we can. I think that... I agree. And I'm planning on submitting on my brief the procedural arguments. I want to get straight to the First Amendment issue. I'm also very well aware of the Court's position on chaconne matter and mootness. I just want to preserve the issue, if it goes any further. And I'd like to respond to appellants' reply briefs, beginning with some of the factual scenario regarding what happened in Mr. Shaker's case. My understanding from the record, it is a little muddy, but the record indicates with Exhibit 3 that he did send in a complaint. The record also indicates that he was sent at least one advisory from the city of El Cajon. He had 11 or 12 cases going, and he was declared a vexatious litigant in San Diego County. So he had at least one advisory sent to them, and that came into his trial. I'm not sure if that advisory was sent in regarding Sergeant Fora or regarding... The advisory of what? The advisory on 148.6. The advisory about making a complaint about a police officer. He was sent their standard form. Do you understand this statute to only apply if a formal complaint is filed that's requesting a formal investigation? Yes, I do. How did you get this? Are you faithful? No, I do. My understanding is the reading of the statute itself. The statute doesn't say that. Well, Section 2 indicates that. The statute has... It says that's when you get this form, but it doesn't say that that's the only time it's a misdemeanor. I don't think it has to be the police agency's form. That's where I'm distinguishing it. I think that they have to be advised, and I think the evidence in the case showed that he was advised. He was sent one. He then sent back a form saying he was amending it. He wrote a letter in, and they sent it back to him, and nobody ever investigated anything with the statute applied. I'm sorry. What did you say? He wrote a letter complaining about somebody, and they sent it back to him and said, We don't choose to investigate this, but you're guilty of a misdemeanor. Would that be okay? I think it has to include the advisory that's listed in the section, which also explains to him his rights, that he has the right to have the agency investigate the matter, and he has the right to a written description, and that is... Let me ask you a question. What's the purpose of all of this? Why do we have this law? Of the statute? Why do we need it? The purpose is to prevent the conduct. I don't think it's an attack speech. What it is is preventing false statements from being filed into a grievance procedure to protect the integrity of the procedure. The state of California is just as interested in finding the rotten apple in the barrel as it is, you know, having access to justice. Do you have any doubt that a certain number of people are going to say to themselves, Look, you know, this is true, and I know it's true, but how do I know that anybody else is going to think it's true, and how do I know that anybody else is going to not think I knew it was not true, and I'm not going to subject myself to possible criminal prosecution. It isn't worth it to me. I'm not going to do it. I think the advisory tells them of their right. I think it's positive. You're not answering my question. No, because it only tells them a knowingly false statement. Yes, but everybody knows, you know, I know, that any decision-making process is fallible, and especially people can say to themselves, I'm dealing with the police. The police, after all, walk around with guns. You can put people in jail. And it's not just any old civil servant. And I'm sort of scared of them to begin with, and they're going to have more chance of getting you prosecuted than other people are. And, you know, I know I can go to a judge and try and make out my case, but how do I know I'm going to succeed? It's just some words, and I'm not going to bother. I'm simply not going to take the chance of ruining my reputation over this. The statute is clear that it's a known allegation of a falsehood. That's a lie. I'm not answering that question. I don't think that it would prevent anybody who believes that there's been misconduct from filing. It's just warning the person who's not telling the truth, the liar, to be frank with you. It's warning the person who doesn't trust the system to tell what he's telling the truth. Well, I think that the statute, one of the saving issues of the statute, is the intent element, which is not addressed in either the opening brief or the reply brief. The knowing. The knowing. It's the scienter element that I think protects the statute, because it is only the person who knows that they are lying that is going to be prosecuted. Who is found to know. That could be an error. Pardon me? Who is found to know. Who is found to know. Right. Which is different. You know, people are getting convicted of capital crimes erroneously, so they could certainly get convicted of this erroneously. And when you have something that's kind of marginal as to people's desire to do it to begin with, aren't some people going to get discouraged? No. I don't believe so. And there was no erroneous conviction in this case. Mr. Shaker was tried in this case beyond a reasonable doubt of whether or not he knew that he was filing a falsehood. And the end result was he wanted $25,000 when he submitted his civil claim. I mean, this is similar to somebody, and I think this also goes to the third element of R.A.V. It's similar to somebody yelling fire in a theater. And when you ask yourself, is there any realistic possibility that speech will be suppressed, you have to say no, because what is it that he, what message is he sending out? What viewpoint, what belief is he sending out? He has no belief. He knows it's false. He doesn't even believe in what he is saying. He knows it is untrue. So what value is there in that? How could there be any kind of substantial risk that speech is being suppressed when he himself is a nonbeliever? What is the idea of being suppressed? And that's when you look at R.A.V. And I can understand where R.A.V. is going. It's saying when you write a statute and you're writing it in one direction and you're outlawing and you're saying this kind of commentary is illegal and you don't include others, you are then directing what is good speech and what is bad speech. But that's not the case in this case. He doesn't even believe in his position. Well, then he could file a libel suit, right? A defamation suit against this guy. This is not a defamation statute. He could do that. He possibly could. I don't know. And if Mr. Cocker wanted to, he could just file a 1983 claim. Potentially, but I don't... I mean, potentially, it's all he'd have to do is he'd file it. I don't see how that is concerned whether or not the statute is constitutional. I mean, if you apply all of the exceptions to R.A.V., assuming that you find that this is not just directed at conduct, there... You know, it just seems to me, you know, we know. I mean, you talk about bad apples, but we know that things go on that shouldn't go on, don't we? Do we? That's true, but we... I remember when I was a municipal court judge and there was this one police officer in Van Nuys. Well, he stopped this kid on a traffic ticket or a traffic violation, he said. He takes him out of the car and he pats him down. Oh, look what I found. A marijuana roach, you know. And the kid says, I don't know how it got there. And the officer says, well, I took it out of his pocket, huh? Right? So who are you going to believe? But that's... Right, or the officer. Then you find out that this same officer has been doing this. And then it takes a couple of years before the department gets down on him and he's no longer with the department. But, you know, when it's this young man and the police and you've got a jury trial or even a court trial, who are they going to believe? That's why the statute is out there. We want to know when there's a bad apple. And my brief, I described it as putting a drop box out. If the officer denies it, and then you file a misdemeanor action against this kid, and it's the kid's word against the officer's word, what's going to happen? In California, it is illegal for a police officer to knowingly file a false police report. That's on our book. If somebody goes... Is your construction of the statute that if someone goes... If this complaint is filed and it triggers a mandatory investigation, which you claim is tied to the statute, and the internal investigator goes to speak to the policeman and the policeman says that none of that ever happened, that would be... Under what statute could that be convicted? There's a separate statute. I don't know the number off the top of my head. I'm sure Mr. Lockwood probably does. But there is a separate statute. And that's what we have to look at. That's filing a false police report. But I don't believe... It doesn't seem to me that this consists of filing a false police report. Well, this... The idea behind the statute... You're not answering me. I'm trying to find out whether this is a... To me, this is the most troubling part of the statute. That it seems to have a... To essentially sanction one party to a two-party set of allegations. In other words, it's like having a trial where one side has to testify independently of perjury, but the other side doesn't. Am I wrong about that? No. I hope I'm answering your question. It has elements that have to be proven. The intent element. The knowingly false statement. The other... Another element is that you have to... I'm going to prove that in that little marijuana roach case. The intent element. You know, it just says, well, you know, there it is. I mean, is it a specific intent or general intent? It's knowingly. The statute is really knowingly. Not general intent. Like in this case, a civilian witness. Or like in any other case, looking at a person's credibility on the witness stand. If they believe one and not the other. If they believe the officer and not the kid, you know, then they have to believe that this young man, you know, lied. And did so intentionally. Do they have to believe it beyond a reasonable doubt? Yes, they do. They do have to believe it beyond a reasonable doubt. And evidence is taken. And that's what happened in this case. Well, that's true as to the trial of the misdemeanor, if it's brought. But what I'm troubled by, and maybe I should just ask one of your amicus. But I'm trying to understand, within the investigation itself, is the same, you know, high polarity the case? Or is it the case that only the complainant is subject to a misdemeanor of this kind, but not the witness? But what I would deal with here. I'll let Mr. Lockwood respond to that. Chris Lockwood for the city. And I'll start with the court's question. First of all, 148.6. Speak up a little bit. Sorry. We record all of this, you know. 148.6 only applies to a written... I didn't give you any Miranda warning, but we recorded it. You have to stay in the middle, see. I don't think they're microphones. It's part of our recording. We've got cameras up here, too. Anyway, 148.6 only applies to written statements. It doesn't cover anything oral. That's one half. Okay, fine. On the police officer side, first of all, Penal Code 118.1 makes it a crime for a police officer to file a false police report. Second, if the investigation is done in an oral statement, not under penalty of perjury, there is no criminal prosecution for the police officer, but also there's no criminal penalty on the complaining party because 148.6 doesn't apply to oral statements. If the officer makes... Say that again. I missed that. Okay. If the police officer makes a statement in response to the complaint not under penalty of perjury, there is no criminal statement. No criminal penalties. But that's exactly the same as the situation for the complaining party because 148.6 doesn't apply to oral statements. If the officer makes a response under penalty of perjury, there's perjury prosecution for that. In addition, if the officer submits a written document supporting his position, Penal Code 132 and 134 apply. Talking about forged, altered, or backdated documents in official inquiries, that's 132. And false documents in official inquiries, that's 134. You put all those together, and if anything, there's more penalties on the police officer for false statements than against the complaining party. You get to another question that the court asked. When does that get us? It shows that there is no different treatment between the officer and the complaining party. Or if anything, the officer is treated more severely than the complaining party. So the argument that there's favor of the officer over the complaining party just isn't true if you put everything... I didn't. I don't go back that far, frankly. The history behind this one, 148.5 has been on the books for quite a while. And it makes it a crime to make a known false report accusing anyone of a crime. There is no exception in there for citizen complaints against police officers. But two California appellate courts ruled that there's an exception there, not in the statute itself, but they just wrote it in for citizen complaints. Shortly after that, we had the Rodney King riots, and a whole slew of frivolous complaints filed as a result. And 148.6 was enacted to plug this loophole. So that gets to a point I wanted to bring up. I didn't know a whole slew of frivolous complaints were filed. That's the legislative history in that document. That's the evidence we have. Well, that's the only evidence we have in this record. Okay, well, they say a lot of things. I mean, where were all those slew of complaints? You know, I became a judge right at the time of the Rodney King matter. I sat in Van Nuys and handled a lot of those cases. I don't remember anything coming up where there was a slew of false complaints people were being prosecuted for. I don't remember anything like that. It's not a matter of prosecution. The problem wasn't valid complaints that are basis for prosecution. It's the invalid ones that clog the system. That's the evil that's being addressed here. I'm going to address a few of the points that the court did ask on. One of the questions asked was what's required to trigger 148.6 in the first place. The Supreme Court in the People v. Banner Street three times emphasized that 148.6 only applies if there is a complaint filed in a manner which mandates an investigation. So you would take that as being a state court interpretation of the statute? If the statute was ambiguous otherwise. Right. Well, that's their interpretation of it in the Supreme Court, so page 501 of the opinion. The statute, quote, does not apply to all accusations of misconduct against peace officers, but only to complaints filed with a law enforcement agency in a way that legally obligates the agency to investigate the complaint. How would you explain? The main argument coming from the other side is that RAV has a special set of rules for even non-protective speech. And that this, even if you take the aggregate of California statutes, and that some official, some complaints that trigger, that are capable of triggering investigations by citizens against public officials are, trigger some kind of possible prosecution and others don't. After you've added all the statutes up that you've done quite ably, isn't it still true that that's accurate? There's a very small difference. And that's the point I want to emphasize anyway. So let me address that quickly as part of the response to your question. There are three basic kinds of complaints that could be made under 148.6. One is accusing the officer of a crime. If that same accusation is made against a non-officer. And one is that crimes are not covered by the other statutes. And then there's the civil service statute that I was writing. And there's a statute about teachers. But there are people left out. Is that not true? I think, well, if there's a known false statement accusing anyone of a crime, 148.5 applies across the board to anyone. Of crimes, but not of non-crimes. Correct. So the only area in which there's any different treatment, and thus the only area where RAV applies to any application, is a known false statement accusing a police officer of misconduct not amounting to a crime. That's a very narrow area. The basis for, and that's the only area we have to look at RAV at all. If you look at the people versus standards, they essentially treat 148.6 as a form of malicious. Why are the police all that concerned about that? Or why is anybody that concerned about it? Why don't we just get rid of that foot piece? And, I mean, why isn't, if that is in fact different for police than for other people, what harm would there be in simply saying it's limited to people who commit crimes? Or alleged to commit crimes. If I were writing the statute, I would have done it that way. But we're faithful to the statute the way it is. Can you just finish answering my question? What's left? Or what isn't left? In other words, all right, we have the crimes out of there. But isn't there, my ultimate question is, is it not accurate, no matter how you parse it, that there are some categories of complaints against public officials for some things and some public officials that are not subject to any truth or falsity prosecution? True. Except, and this is where the sanity is important. The difference for police officers, which doesn't apply to the other officials, is that if you file a formal complaint in a manner which requires an investigation, that's a requirement that doesn't apply to anyone else. And if you look at the People v. Spanish Streets on page 510 of your handout. But I'm not sure it's accurate. I mean, I'm not sure I've read every possible statute. I started looking around and it seemed to me that at least with regard to teachers and people covered by the state personnel board, that there are mandatory investigations and they are required to file under penalty of perjury. And if there's these filings under penalty of perjury, then there's a criminal sanction. They could have done it this way. They made a lesser penalty. What constitutes a filing that necessitates an investigation? Okay. Yes, I was going to bring that one as well. There's actually, probably the best to take a look at that one, there's an opinion from the California Attorney General. I cited it on page 22 of my brief. And the slide, if you want it, is 79, opinion of California Attorney General 163. What it states essentially is that if there is a filing, a complaint on the form with the warning the statute mandates, then the agency is legally mandated to investigate. If it is submitted in some other format or, for that matter, on the form but not signed, they are entitled to investigate. They are not mandated to do so. And the statute, therefore, doesn't apply to that circumstance. Correct. And the standard street, we recognize the file. Seekers of prosecution could have been an error, possibly. This is one area in which I disagree with the wording of this one. I think that is the correct deletion. That is true. That could have been an error. Yes. Depending on exactly what happened. I don't have the entire record. But that's the issue. Well, what did he file? Did he file anything or did he just send a letter in? You know, I haven't seen the record. I'm not in a position to address that issue. I'll refer back to her. There's two very brief points on 118 that I will file. So you're saying that this fellow, Cocker, he was prosecuted in error, huh? Potentially. He didn't file anything. He just sent that letter in. And then he filed a claim with the city. You know, the tort claims that. The claim definitely isn't a basis. The claim definitely isn't a basis. And it depends on exactly what the tort claim is not a basis for prosecution. No question. So is the letter a basis for prosecution? If he included the warning, yes. In my opinion, otherwise, no. Okay. But did he include the warning? I haven't seen the forms. I haven't seen his letter. So I can't answer that question. Well, you don't think he sent down his own letter and he wrote all this? From what I've heard about him, he was a lawyer who did some unusual things. I frankly don't know. Well, aren't you here arguing this matter? You think you would know. The trouble is that I've looked at the record. It's not in the record. Well, how are we going to know? I'll defer back to counsel on that issue. A few more points. There was a statement by Mr. Rosenblum that Civil Code 47 provides an immunity. That's a civil immunity. It has no application. There has never been a California privilege or immunity for anything. One final point I want to make is that I'm here because of the Hamilton case. Judge Timberlake has now issued two opinions. The second one was actually issued after the briefing of the case was done. I presume you're aware of that. And I think that the problem that he made is the one that the court's questions have highlighted a number of times, that he looked at 148.6 with blinders on in a vacuum. He looked at his opinion. It doesn't hide anything other than 148.6. He doesn't look at the other statutes which are out there, even though I cited them to him. If somebody files a charge against a judge and says this judge, you know, decided my case was a conflict, does the state, the Judicial Council have some obligation to investigate that? I don't know if there's any legal mandate to do so. It probably would as a practical matter. Well, I'd have to check, but I would assume that there is some kind of provision. And there's no, is there a similar statute or we don't know? I couldn't find one requiring that to be in California privilege. On the other hand, unless there's something important. If somebody files a complaint against a federal judge and it goes through the whole process, you know, and all the way, you know, through the system of the judges and, you know, judges given an opportunity to respond, every one of those. And it depends on how formal it gets. An informal letter wouldn't be the basis of prosecution under federal law. But if they're making a statement under penalty of perjury, they're prosecutable. If the judge makes a statement the same way, they're prosecutable. I don't see that's a major distinction here. That's under state law, huh? Well, it's a federal law. If they're making statements under penalty of perjury, that is the criminal sanction for it. But right now, we don't know what was filed that would require an investigation. Is that correct? Correct. As far as this case is concerned, my... Isn't that essential? As far as the conviction is concerned, yes. And as far as what is this particular... Correct. As far as whether this particular conviction spans or falls, I agree. I'm here to address the... Can I ask you one other question? Sure. How many people have been charged under this section? Very few. The research, the Spanish Street case came out of Ventura. I was also involved in that case, and the district attorney was not aware of any other ones. I've checked with the city and county of San Bernardino, and there are no prosecutions at all there. As of San Diego, I'm not aware of anything other than this one. It's a rarely enforced statute, partly because of the very high standard of proof. No, but partly what they're doing is they're going after this guy who sounds a little crazy, you know, and he's been judged to be a vexatious litigant, and they want to get him off their backs. Right? That's about it. You use the... It's like anything else, we use these statutes. No, you know, we're not really using up resources. We talked about, oh, you have to have an investigation, and we, you know, we're endangering law enforcement efforts in other areas. Well, it's a tool to reduce the number of false statements. Just like the perjury, it doesn't stop people from lying. I think that's what happens all the time when people lie. But it reduces it, and it's a significant tool to do so. I think I've addressed all the issues that the court... Unless the court has any questions about the issue. It says it's Key 1. I understand that. And I would if I could. Well, if somebody can address it. But one possible resolution is to find the statute constitutional and to send back the conviction based on the particular facts. The matter of fact was related to something, wasn't it? What did you say? I missed that. One possible resolution of the appeal is to find the statute facially constitutional, but to remand to the district court for factual findings on whether, in fact, there was a violation of the statute. Does the court have any questions on that? Well, hasn't there been an appeal? An appeal of it? Of which case? This case. Okay. Yes. But that is one possible... ...mechanism to do that, not this one. You're talking about the appeal of the original conviction. The answer is no. There wasn't one, was there? There wasn't. I can defer back to counsel on that one. There was an appeal of the original conviction in a superior court. We'd better do it over here so we... There was an appeal of the original conviction in a superior court, and they found that... And he raised the sufficiency of the evidence issue. He raised that several times in that court, and then he filed a writ in the California Supreme Court, but it was denied. And I think even the district court addressed that. Well, you know, those appeals that go to the three-judge superior court, how many are reversed, you know? One every two years or something like that. I've seen some of those circumstances. If we have a... You have a conviction as if he did X, but there doesn't seem to be any evidence that he did X. There seems to be evidence that he did Y. Well, X is Exhibit 3, which admittedly we don't have. He did send in a letter, and the statute requires that he be admonished and that he acknowledge it, I think, through his signature. And we know that he was sent an admonishment form because the month before he was sent an admonishment form for the accusation that he was making against Sergeant Rasta. So he has had at least one acknowledgment form sent to him. You're probably saying somebody got their Miranda rights because they were warned, you know, a month earlier in another matter. Well, no. They have it in their minds because they're, you know, they're always getting in trouble. And so the fact that they didn't get them on this occasion, it's of no consequence. Well, I think it's just that whether or not he's aware of it. And I'm certain he was aware of it. That doesn't seem to be the question. The question seems to be, as I understand it, that if your colleague is right, the Stata Street opinion held that the only instance in which somebody could be convicted under the statute is if he files a formal complaint as to which there is a mandatory obligation to investigate. My understanding is that there is no mandatory obligation to investigate any letter that comes in the mail. So if he doesn't meet that criteria, he doesn't seem to have committed the requisite crime, but he must have been convicted of it anyway. So what do we do with this in terms of what are we addressing? That is a First Amendment question. What he actually did or what the statute says. No, we're looking at what the statute says. And we don't know because the record is poor, I admit that. But we know he sent something that was Exhibit 3. We know that he was convicted of it. And we know that several judges have already reviewed the sufficiency of the evidence. We're here to decide the constitutionality of this. Before the Stata Street opinion, right? Right. Before the Supreme Court said definitively that you can't be convicted of this crime unless you, in fact, file a complaint in the form that triggers a mandatory investigation. We know that he filed the complaint. We know he had the advisory. And we know that on one of them he addressed it as he's amended the complaint to add under penalty of perjury. So I think that's what the record is. Not in this case. No, on the other one, which was filed at about the same time. You have the – we're dealing with this case. We're not dealing with another one. The issue is the spatial constitutionality of the statute. He's already had that. Doesn't he have to show that there's been a violation first? This isn't a 1983 case. If there's a violation, then he'll sue you for something else, you know. This isn't a 1983 case. It's a habeas, right? Right. So how does he spatially attack the statute? I'm not sure what the remedy is here either. So all I can tell you is what I've indicated about the record. Thanks. And I don't know if I've given him any time. No, no, he's got a good smile. We give him time. Thank you, Your Honor. Honorable members of the Ninth Circuit. Mike, please, the court. Michael R. Papese on behalf of the three associations, State Sheriff, California Peace Officers Association, and the Police Chiefs Association. With respect to the issue before the court, we continue to refer to it as unconstitutional by the appellants because it punishes speech. I would like to substitute what really is covered by the statute, and that is known lies. It's a statute which punishes known lies. New York Times versus Sullivan has equated malice, actual malice, with both reckless disregard for the truth and known lies. This is much more stringent than that definition set forth by New York Times versus Sullivan. That's not the argument. The argument is content or viewpoint discrimination, and that being different. I mean, it would be helpful to me to know exactly what the interests are that we're protecting, and I tried to talk about that before. But RAV does say specifically that if you prescribe certain kinds of libel but not others, there's a problem. Well, I think one of the problems that muddies the water is the fact that the appellants are continually trying to equate the civil statute for libel with this statute. And this is not really a libel statute as such, but it's a criminal penalty. And unlike a civil statute, well, I think it does, because this is not a statute which provides redress for an individual wrong as a civil statute does, but it's a statute that's designed to protect the public as a whole. And the police officer is a member of the public, and it's not unusual to protect certain segments of society. We protect women who are rape victims. We protect peace officers greater than the average individual in terms of assault on a police officer as a felony, whereas a simple assault by an individual on another individual, if I got hit in the chops, it would be a misdemeanor. But there are reasons for that. And these complaints of police misconduct must be filed with a police agency, and it must be the police agency that employs... Why does it say that in the statute? The statute, 148.6, every person who files any allegation of misconduct against any peace officer, knowing the allegation to be false, is guilty of a misdemeanor. And then 832.5 of the penal code requires that a police department investigate those allegations, But the crime doesn't say anything about filing with the police department. It doesn't say anything. It would not be filed with an agency that does not employ the officer because the Los Angeles Police Department, for example, is not the internal affairs investigating agency for every other police agency in the state. It must be filed with the agency that employs the officer, and it's that agency, pursuant to 832.5, that is then required to investigate allegations of misconduct against its own... What about filing a 1983 action in court? That would be filed in... Well, it could be filed in state court, but it would be governed by the statute dealing with perjury, and it would be dealt with by testimony, which must be under oath. As pointed out, investigations of these complaints do not require that the individual being questioned and making the complaint be placed under oath, and it's the false accusation that mobilizes the police department. As Your Honor pointed out, it's the false alarm that causes the public resources to be mobilized. As is perjury, Your Honor. As is perjury, but no one is suggesting that we do away with perjury to protect the integrity of these proceedings in courtroom. If Appellant's argument had validity and was given any credence by this court, I can just imagine their next assault would be on Rule 11 of the Federal Rules of Civil Procedure, because that could intimidate some potential litigant from filing an action because they might be subjected to sanctions if it wasn't. All of the statutes that regulate wrongdoing that may be committed against another member of society carry with them criminal penalties. Some are frequently... The basic argument that's being made here is that Rule 11 and 18 U.S.C. 1001 and other general perjury statutes don't differentiate on the basis of subject matter as to what they're going to cover. Right. Anytime you make a false statement, anytime you lie in court, or anytime you file a complaint that you know not to be true, no matter what it's about, you're going to have the same problem. No, Your Honor, because as was pointed out earlier, when we look at the statutes that place requirements on police agencies to conduct an investigation, there are allegations of crime, and if they're false, that is covered by 148.5, and there are allegations of misconduct against its own officers, and pursuant to 148.6, if those are known lies, then they are subject to penalties, because 832.5 requires that police agency to investigate those allegations. And an individual, if they want to make complaints against police officers or judges or anybody else, they can take out a full-page ad in the newspaper. They can pass out handbills. If you file a complaint with the State Bar with regard to your lawyer, and they do, as I understand it, mandatorily or are obligated to investigate, is there any similar provision? There are differences, and as the Court pointed out, the police departments are individuals that are charged with enforcing the law, investigating violations, and they're there with their guns. And the Court suggested that possibly that is intimidating in and of itself. I would submit that it's not. Sure, they make arrests and they can put people in jail, but judges have black robes and can put people in jail. But that doesn't make it intimidating. It appears that you're more likely to land in jail by guessing wrong about what a jury is going to find about what you knew with regard to a police officer complaint than if you complain about a judge or a lawyer. Is that right? There's a specific statute that provides for the complaint against a police officer, and that's an adjunct of 148.5, and together they encompass the entire realm of instances where a police department must roll out the troops and conduct an investigation. So the answer to my question is yes, you didn't answer it. I'm not sure it is yes, because I think the comments that we've heard this afternoon, and I think the statistics would indicate that there are very, very few instances of prosecutions because of the very, very difficult burden that is placed on it, and there are probably many more allegations that are... What do you mean by a very difficult burden being placed on it? You mean there are very few prosecutions because these cases are so hard to prove? Well, as your Honor pointed out, it's in some instances a one-on-one situation, and these aren't cases that can be prosecuted by the police departments. They have to present it to the district attorney or city attorney, and the district attorney and city attorneys will screen them to make sure that there is sufficient evidence other than just the one-on-one. To prove beyond a reasonable doubt, right? And beyond a reasonable doubt, no question about it, as opposed to... You've got the police, you know, an investigator, and then you've got the defendant. That's all you have. That's correct. And the trier of fact, as in so many other instances, must determine who is telling the truth, and if there is a reasonable doubt, must fine for the accused. That's basic. If we were to throw out a case because it's difficult to prove... We get down in the federal district courts almost 100% conviction. Well, I'd submit that the cases are screened and the judges are properly presiding over the trials to make sure that innocent people are not convicted. But if we're going to throw out 148.6 because there may be a one-on-one situation, then we'd have to throw out all of our traffic enforcement laws as well because those are, in most instances, one-on-one situations. The rape cases, as I mentioned earlier. And the same is true... And if you... Excuse me. And if you dissuade somebody from making a complaint to the police, which probably isn't very hard to do because people have other reasons for being reluctant to do that, then you have curbed some piece of protected speech, not simply anything. That has to be the argument and that has to be something that R.A.V. is talking about. But I think we should also distinguish R.A.V. on the basis that it was dealing with symbolic speech and it didn't set aside Garrison. It didn't set aside New York Times versus Sullivan. It didn't have language. I mean, I think there is something to this notion that the truth-falsehood doctrine could possibly be different for R.A.V. purposes except that R.A.V. says otherwise. R.A.V. says specifically in it that libel is to be treated similarly. You can't have libel of certain kinds but not libel of other kinds. I don't know why, but that's what it says. But I would submit that this is not libel any more than the investigation by the FBI into an allegation, as the court pointed out, of a member of the bench is... Except that the main difference, this is the core of this case, is that the FBI... Well, the agent... You did not say the FBI, I'm sorry. But if the FBI did, there's a statute that says that it's a crime to lie to the FBI. Exactly. But it doesn't say only about judges. No, anything about which they are investigating. And this is only a statute that applies to anything about which a police agency is investigating. Because the only things that they can investigate are allegations of crime, 148.5, and allegations of misconduct against their own police officers. They are not required to conduct investigations on allegations against any other public official unless it amounts to a crime. And under those circumstances, if the allegation is a known lie, it's covered by 148.5. The appellant suggests that, on the one hand, and speaks approvingly of language of the appellate cases, that threats on a president, the statute that makes threats on a president, can be upheld. And then suggests that because the statute in question deals only with allegations of misconduct and not laudatory phrases, it is defective. But yet, there's no distinction between the two statutes. Threats against the president only applies to threats. It's not content-based. Well, it is content-based, except that the content in question is permitted to be singled out because it isn't protected. And I gather what is being said here is that the category we're talking about here is knowing falsehoods, and those can be in either direction. A threat is a threat. Telling somebody that you're going to give them a prize isn't a threat. But a knowing falsehood can be either you did a great job or you beat me up. No, it's an allegation of misconduct, not an allegation of doing the job well or praiseworthy. And with respect to the threat against the president, it's a threat. It's not keeping platitudes on the president or saying I'd like to... What case do you have in mind that threats against the president? The RAB case, I believe, is the one that talks about it, and several of the other cases that were cited, and it's in the briefs. I think I had the first case involving threats against the president. I thought maybe you'd cite my case. I think I remember the case. I can tell you all the facts about the Marine at Camp Pendleton that knew President Johnson's plane was coming in there and threatened to shoot it. And he was convicted, and we upheld the conviction. And unfortunately... Was there a violation of free speech? It didn't come up then. Well, I think the statute has apparently been cited approvingly since then as not in violation of any constitutional rights. And I would submit that the statute in question here, 148.6, can be equated to that particular statute. Finally, with respect to whether or not a signed form as set forth in 148.2 is a prerequisite, I would submit that it is not. 148.1 sets forth the elements of the offense, and it does not set forth a requirement that the allegation be made in the specific form of 148.6A2. It was a letter, was it not?  Was it a file? It's my understanding that it was in reading the briefs of the appellee. I believe there's a reference to it in the... There's a reference to it, but nobody seems to have the letter. Nobody has the letter? I'll have to say, I made an attempt to find it in the record, but my copy of the record had the pages cut off at the bottom. It made it very, very difficult. But with respect to that requirement, I would submit that it's analogous to another situation that's covered by California appellate law. There's a statute, Penal Code section 4573.6, that requires a jail have signs posted on the outside that it's unlawful to carry drugs or to take drugs and narcotics into the jail. And in a case where a person was charged with taking narcotics into the jail that was not posted with one of those signs, the California appellate courts have upheld the conviction in the case of People v. Gutierrez, 52 Calab 4, 380. That's 52 Calab 4, 380. And I'll be happy to submit a letter. Everybody knows that you're not supposed to take drugs into the jail. Well, everybody should know that you're not supposed to make known lies when you're calling on a police department to conduct an investigation. I just threw a soft pitch at you. Thank you, Your Honor. I appreciate that. But in that case, they said that ignorance of the law is no excuse. And they pointed out that the legislature did not include that as an element in the particular statute making it a crime to bring drugs into the jail. And that there were other statutes that they point out in the opinion where the legislature had made notice an element of the crime, indicating that the legislature knows how to do it. And so I would submit it's analogous to our situation here. 146A1 does not include that as an element of the offense. And it's not a prerequisite. With respect to the statute, we would submit that it's not an infringement on legitimate protected speech. It is a protection against mobilizing an investigation based on malice, based on a known lie. And I appreciate the Court's indulgence in allowing me more than the four minutes that were reserved for me. Thank you. Nice to see you all again. I just have. I just got a bullet in the wall of change while we were sitting there. Let me ask you a question. What is the distinction between this and the federal law that makes it a crime to make a false statement to the FBI? The difference, Your Honor, is that it's a perfect example. Because it doesn't matter who makes the false statement or what the subject matter is with respect to the FBI. In this case, it doesn't make any difference who makes the statement. In this case, there is a concern. This case, the statute you refer to is constitutional because it's across the board. It doesn't matter what the individual is talking about. It doesn't matter what the content is with respect to it. It can be complaining about an FBI officer. It can be complaining about a judge. It can be complaining about the Warner Act. It doesn't matter what the statement is or what the subject matter is. If it's a false statement, it can be punished. And as Burzon pointed out earlier, perjury laws are precisely the same sort of law. They don't single out a particular form. Now, that was precisely the point I was asking about the concept. Well, if it doesn't single out, then it has to be made to a federal agency. Yes. But the problem here isn't the agency. It is the subject matter that is being taught, that is redressable by a prosecution. That is what RAB stands for, is that even in the category of prescribable speech, you cannot pick and choose favors. Government can't have particular biases. And that's the distinction with the statute that Your Honor is referring to. As I said, it doesn't matter what you're talking about. It doesn't matter what kind of a false statement is being made. Yes, it does, Your Honor. 148.6 says every person who files any allegation of misconduct against a peace officer. And then further, it says if you're stating that the officer behaved improperly. That's the subject matter that is singled out for criminal prosecution. Counsel says, well, we're concerned about bad apples. But they're not concerned about bad apples. If the state had been concerned about bad apples. Number two has to do with having to sign that form. Yes, but it's any. Number one provides what the misconduct. Any allegation of misconduct. And the advantage of two is that it indicates it can run the gamut. It can run the gamut from the officer was rude towards me as misconduct, as behaving improperly. All the way to the officer committed a murder. Now compare that with respect to a complaint to the Commission on Judicial Misconduct. Which does not require. Compare it to the statement of the FBI. That can be anything. Any kind of a statement. No, the distinction, Your Honor, is this. The 148.6 is narrow. It deals with misconduct about a police officer. Period. In fact, Judge Berzon's point, which I'll answer here, is that the officer answers back. In an e-mail. I didn't say that. In fact, she called me a son of a bitch. I didn't call her a son of a bitch. None of the statutes which counsel cited, and he conceded as much when he talked about a narrow gap. It's broader than he conceded, but it's still an important concession. None of those statutes deal with a response by the police officer. That's not a police report. He says if it's in writing, it's a police report. Well, I just had 134 pulled, which is the closest that I could see to being here. And that's not what we're talking about in 134. 134 is talking about forgeries. It's talking about false records. So that is pristine viewpoint discrimination. You can object to what the government's doing. That can be prosecuted. The government responds to the individual. It cannot be prosecuted. The most interesting thing I think that he said was that essentially, you know, the FBI is an agency, and any lies to an FBI are covered. And he says, well, with regard to law enforcement officers, if you add everything together, any lie to a law enforcement officer's office is covered, because all the law enforcement officers do is investigate complaints of crimes and investigate internal complaints about their police. Now, I suppose these are only formal complaints and only in writing, but there is a subcategory, there is a category of kinds of speech with regard to this kind of an agency that seems to be universally covered. Is that not true? I think that's right, but I don't think that deals with the precise issue in this case. And I think if you compare RAV with Virginia versus Black, it points out the distinction. In RAV, the cross-burning statute only dealt with race, gender, and religion. And it was found unconstitutional as content-based even within the realm of prescribable speech. And I want to say, Your Honor, if I can just divert for a moment, Your Honor, I think Your Honor's distinction could have been a basis for RAV. It was not. That is, when the court, Justice Scalia talked about fighting words, Your Honor will recall that he compares it to a noisy sound truck, meaning that it has no value whatsoever. And he specifically A noisy sound truck can have value, which says very loudly and annoyingly, and therefore can be proscribed, whatever it's saying, but what it's saying can have value. Your Honor may be right, but Your Honor, your argument's with Justice Scalia, not with me. I understand, but it's difficult for me to think about the next step of something when I can't understand the first one, and that's the problem here. But, you know, in respect to that, what is terribly important is the other point that Your Honor made with respect to libel itself. Because the court said, as Your Honor pointed out, look, the government may prescribe libel, I'm reading from page 384, thus the government may prescribe libel, but it may not make the further content discrimination of prescribing only libel critical of the government. Even within that realm, even though it is featured... It says that, and, you know, I'm not at all sure why it would say if there was ever such a case. It does say that, and if we're good court of appeals, judges will follow it. So there we are, but the logic of it is difficult. Let me return to Judge Huck's point. In my understanding, Your Honor, the 1001 statute that the court is referring to, that Your Honor is referring to, is roughly analogous to the situation in Virginia v. Black. That is, there was an interest in each of those cases of saying you can't do something. You can't make false statements in the federal statute. In Virginia v. Black, you can't burn crosses. What saves the constitutionality of both of them is they don't say in 1001, you just can't make false statements about FBI agents. You just can't make false statements about law enforcement. It's any false statement. By the same token... That seems, to me, that seems a broader prohibition that would chill speech even more so, because it can be against anybody. Your Honor, the way to remedy, and this is at the end of the REVC... By the way, you might know that I'm not a very big fan of 1001. Yeah, neither am I. Well, neither am I, Your Honor. So we've got three votes here. But in terms of its constitutionality, what does save it is precisely what you're saying. Could the state legislature come back and say, assuming Your Honor's strike this statute, and say, okay, we're just going to make it across-the-board perjury? So you're saying if there were a state statute that said if you're going to file charges with the judicial council charging a judge with misconduct, it has to be under penalty of perjury. I want to add one more example just to fill it out a little bit more. Say with the ethics commission. You don't have to be a public employee to have it brought. You could be an appointee of the mayor or appointee of the governor or someone like that. Yes. And if that said it has to be under penalty of perjury, that would be no good. Because it doesn't apply to police officers, for example. It would not be any... They can't favor... They can't say our interest is in going after bad apple judges and not bad apple police officers. In the same way that you can't prescribe burning crosses just for race, religion, gender, which we all know was the bulk of the recent war. What's uncomfortable about this is that this isn't public speech. The one thing this isn't doing is saying you can't go out in the street corner and say nasty things about police officers. Right? You can say anything you want in the street. Yes. And so we're dealing with different agencies' discreet concerns. I don't think that's correct, Your Honor, in this respect. Your Honor is right. It is not public speech. But the reason this case, to me, is so terribly important is because it is speech that goes to the heart of what the First Amendment is about. It is quintessential political speech. It goes to Your Honor's point when I was first up here about what's really lurking behind here. United States Supreme Court in Houston v. Hill. This court in the Duran case, Judge Kuczynski at page 1378 of Duran, the freedom of individuals to oppose or challenge police action verbally without thereafter risking arrest is one important characteristic by which we distinguish ourselves from the police state. Gertz? But neither the person in Houston v. Hill nor the person in Duran has a problem under the statute. This is really close to my point. That's the problem with this statute. That is what's lurking here. And I suppose I think it comes into the compelling interest or the least restrictive alternative part. But it clearly is what is hovering over this case. If you want to make a complaint about a police officer, then we better be sure that there is no content-based discrimination. Because the policy against content-based discrimination is that we're not, we want to be sure. We don't have to know to a certainty. But we need to... Say that again, please. It's a bona fides test. That you're really after what you say you're after and not after something else. But what's so interesting about the way the court frames it, going all the way back to Mosley, is that it's the specter. You don't even want the specter that the government is trying to push out a particular type of speech. Is this speech important? It's terribly important. And that's why Duran and Houston v. Hill at page 461 and Gertz at 345, we expect police officers, I mean no disrespect to them, to take a certain amount of abuse and a certain amount of statements. This court has said that over and over. Why? Because it is part of political speech. It is the rough and tumble of complaining about the government and in fact that function of the government that is on the street that interfaces every day with it. And that is... The statute said, making a parallel to 1001, every person who files any allegation, false allegation, against anyone, is subject to a misdemeanor. That would be constitutional. That would be constitutional. Yes. And I would... Even though it's a lot broader and would kill a lot more speech. I appreciate that, Your Honor, and I wouldn't be a fan of that. And I think, Your Honor, that is a hypothetical that we'll never see. Because I think the concern that Your Honor raises is one that would animate it. I agree with what Your Honor said earlier in this argument. A particular lobby acted here to get a particular result. So it's a bona fides campaign. What I'm really saying is that before that could happen, if that happened, it would at least demonstrate that the interests were really what they said they were and not something else. Exactly. And whereas I would... May I just respond one second, Judge Pregerson? Go ahead. Whereas I would... I'll let you in gently. I would regret the sort of statute that you're talking about. Because that is a core First Amendment concern. Even more, perhaps, is the notion that government can't play favorites. And that's what's behind the content-based discrimination. That goes to Judge Berzon's point about the bona fides of the situation. Well, they do play favorites in not being able to threaten the President. Yes. And the reason that is, the reason that's acceptable is because it takes a particular type of prescribable speech and it satisfies the purpose of that speech. The reason... Excuse me. The reason that that's prescribed. I mean, it's only... Really, the words that are uttered around that don't make a lot of sense. Ultimately, what you're really saying is that the resource... It's really another resource allocation thing, it seems to me, which says we protect the President differently than we would protect anybody else. So the false alarm problem is a lot worse when you're dealing with the President. I think that is one explanation. Another explanation is, Your Honor will recall that if there was a particularly virulent form of obscenity, in thinking about the RAV case, that the court said that falls within the first exception. And it goes to your bona fides point. We're not concerned that something is sneaking past here that has a different interest in terms of trying to repress protected speech. If it's the most virulent form, the way the exception is stated, I think it's at page 387, the way the exception is stated is do we know... Is the discrimination the reason for the prescription of the speech in the first place? If it's against the President, if it's a particular type of obscenity, if we know that it is a subcategory, even more virulent, then that exception kicks in. That is not the situation here. Judge Gregorson, I cut you off earlier, I'm sorry. I was listening intently to you. There's been some strong indication here, at least in my mind, that this statute was not violated. And every person who files any allegation, well, we have nothing to show that he filed any allegation. And we don't even have a copy of whatever letter he sent. It was sent back to him, wasn't it? Your Honor, I don't want to... It sounds to me here like no violation took place. I don't think it was sent back to him. I don't want to misrepresent. I'm not familiar with... Do you disagree that... I'm sorry, finish. But listen, I mean, what is there to show there was a crime committed here? We've almost had the amici tell us that they think a crime was committed. Well, I don't want to make a case for the prosecution of him under this statute. I first say I'm not fully familiar and I would be misrepresented. I do know that the text of the statute itself doesn't have the sorts of modifications that I heard some of the amici stating it, at least. And I also don't know as a procedural matter, frankly, how it can be done. I haven't thought about it. If Your Honor wants me to brief it, I would be pleased to do that, but I have not given that thought, Your Honor. Well, and it's every person who files any allegation of misconduct. Did that happen here or not? My understanding is that it did, but in terms of... I don't want to be arguing his prosecution here. I'm not familiar enough. I'd be pleased to brief you. Maybe it's not even a case of controversy here. Well, it's under an unconstitutional statute anyway, Your Honor, so... So, you know, maybe we don't have to go through all of this. I have two last questions. I have three last questions. One is that in answer to your earlier representation that the statute doesn't require that there actually be an official filing, that CHCR is a mandatory investigation, your opponents point to Stata Street. Aren't they right about that? Stata Street essentially construes the statute. I was looking for that during the break, Your Honor. I don't know the answer to that. My understanding is that that was not a core issue in that case. But it is how they construed the statute in finding a constitutional. I'd have to review the case to answer that. And the second is, is there any argument or any doubt that if we were to agree with you that this was a facially constitutional statute, Mr. Chaker still loses on habeas? No. Why? May I just go to the chronology for just one moment? I don't know what particular theory. There's two issues that could argue with it. Well, whether this is a reasonable interpretation of established constitutional... Okay, okay. That is what I refer to as the Andrade issue. Well, I don't think that's... No. I understand that's not the case. I don't think that's causative. In Andrade, Your Honor, we'll recall the court specifically said that our cases have not... Justice O'Connor said our cases have not been a model of clarity and the path has neither been clear nor consistent. This case is squarely decided by RAV. That's a 1992 decision. That case specifically held that even in the category of prescribable speech, there cannot be content or viewpoint discrimination. The test that Your Honor... The 2254 test that Your Honor is referring to is a test about whether or not there was an unreasonable application of clearly established principles. Those principles are clear. The State Supreme Court got it wrong. It got it as wrong as it could be because it didn't apply those principles faithfully. But the underlying principle we've been talking about for a couple hours now, that's all in RAV. And Your Honors will recall that Justice Scalia specifically says not only is he laying it out there, but he says at page 384, anything else is at odds with common sense in our jurisprudence as well. I'll be frank with you. If I didn't have RAV, I'd still be arguing that under Mosley and Simon & Schuster and the Kerry case, it's clear. But the example of libel is specifically given within that statute. They have not argued today that there should be a different standard with non-prescribable speech. Is that the heaviest issue you wanted me to address? It is. Thank you. Thank you all very much. Excuse me. Yeah. By the way, Your Honors, Justice Kennedy, ACL has filed a case against National Security, and I know it looks like they have an opportunity to bring the court to trial and respond, hopefully before January. Until when? Until January, if that's possible. Why? She has other things to do. Yeah. We've got other things to do too, but I don't care. You want January 2007 or something? That would be nice, but the last week of January is possible. That seems like enough has been said. I don't know what their brief says. My understanding was their brief was simply supposed to be a shorter version of what they said before, so maybe we need to wait and see what is in it before we decide whether it needs to be answered. Okay. Well, you know, if you get any more information that's in the record that has been overlooked about whether, in fact, there's been a violation on 148.6, I'd like to know. There's a lot of gaps here. The excerpts of the record contained at page 14 discuss what kind of a letter he sent and about the letter that he sent earlier regarding Sergeant Borah. In Sergeant Borah, they sent the letter back to him, and there was an exchange, and he finally sent in a formal complaint as to Sergeant Borah. But as far as the record indicates, he simply wrote a letter. He entitled it complaint. He settled it under penalty of perjury, and that was the complaint that initiated this investigation and resulted in the ultimate conviction. Well, if he settled it under penalty of perjury, then... They wouldn't have had to use this statute. They would not have had to have used this statute. That's not necessarily true. That perjury has to be authorized by law. If he just adds under penalty of perjury, he can't settle a grand prosecution. Well, why not? He has to be authorized by law. He's authorizing himself. What do you mean authorized by law? There has to be a direction from it. I mean, he can't just create that his letter is under penalty of perjury. Even so, it would be an issuing decision in any event, and they should track that for this section. Perjury is hard to prove, though, isn't it? Yes, it is. Very hard to prove. Thank you. Very enlightening discussion. Thank you. All rise. The court for this session stands adjourned.
judges: Hug, Pregerson, Berzon